UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| I.S.B.,  also known as Inmates Strike Back; | ) | Civ. 10-4142-KES |
| WILLIE REED, IV, Chairperson of I.S.B.; | ) | |
| GARY FEDDERSON, Chairperson of the Third District Inmates Constitutional Rights Committee; | ) | |
| ELIAS JOHNSON, chairperson of the Fifth District Inmates Constitutional Rights committee; | ) | ORDER DISMISSING CASE |
| TIMOTHY MADDOX, Representative member for inmates convicted in the First Circuit Court; | ) | |
| STANLEY REED, Representative member For Inmates convicted in the Sixth circuit court; | ) | |
| REPRESENTED CLASS OF INMATES INCARCERATED; | ) | |
| DANIEL LEE ELLENDORF, Chairperson of The contingent Constitutional Rights Committee; | ) | |
| CHRISTOPHER JOHN WALDNER, Representative member of The Contingent Constitutional Rights Committee; | ) | |
| NICHOLAS RYAN HEMSHER, Representative member of The Contingent Constitutional Rights Committee; | ) | |
| NICHOLAS QUENTIN ANDERSON, Representative member of The Contingent Constitutional Rights Committee; | ) | |
| RAMON VALERIO GARCIA, Representative member of The Contingent Constitutional Rights Committee; | ) | |

DONALD INGALLS, member of          )
Contingent Constitutional Rights   )
Committee of I.S.B., et. al.; and  )
RALPH BUCHHOLD, member of the      )
Fourth District Inmates            )
Constitutional Rights Committee of )
I.S.B., et al.,                    )
ZACHARY T. ARVIN;                  )
JAMES R. JAMES;                    )
CLAY STUBBS;                       )
JAKE LEVI BRINGS THREE WHITE       )
HORSES a/k/a Levi Brings Three     )
White Horses,                      )
                                   )
       Plaintiffs,                  )
                                   )
vs.                                )
                                   )
STATE OF SOUTH DAKOTA              )
COMMISSIONER OF                    )
ADMINISTRATION, person or          )
persons;                           )
SOUTH DAKOTA DEPARTMENT OF         )
REVENUE & REGULATIONS, Div. of     )
Insurance, person or persons;      )
SOUTH DAKOTA BUREAU OF             )
PERSONNEL, person or persons;      )
SOUTH DAKOTA DEPARTMENT OF         )
HEALTH AND HUMAN SERVICES,         )
person or persons;                 )
TIM REISCH, South Dakota           )
Department of Corrections Cabinet  )
Secretary;                         )
DOUGLAS WEBER, South Dakota        )
Department of Corrections, Warden, )
Director of prison operations;     )
SOUTH DAKOTA DEPARTMENT OF         )
CORRECTIONS, State Penitentiary    )
person or persons;                 )
SOUTH DAKOTA DEPARTMENT OF         )
CORRECTIONS, Jameson Annex,        )
person or persons;                 )

SOUTH DAKOTA DEPARTMENT OF          )
CORRECTIONS, Mike Durfee State      )
Prison, person or persons;          )
SOUTH DAKOTA DEPARTMENT OF          )
CORRECTIONS, Rapid City             )
Minimum Unit, person or persons;    )
SOUTH DAKOTA DEPARTMENT OF          )
CORRECTIONS, Women's Prison,        )
person or persons;                  )
SOUTH DAKOTA DEPARTMENT OF          )
CORRECTIONS, Yankton Minimum        )
Unit, person or persons;            )
STATE SOUTH DAKOTA PAROLE           )
BOARD OF PARDON, Person or          )
persons;                            )
STATE SOUTH DAKOTA FIRST            )
CIRCUIT COURT, person or persons;   )
STATE SOUTH DAKOTA SECOND           )
CIRCUIT COURT, person or persons;   )
STATE SOUTH DAKOTA THIRD            )
CIRCUIT COURT, person or persons;   )
STATE SOUTH DAKOTA FOURTH           )
CIRCUIT COURT, person or persons;   )
STATE SOUH DAKOTA FIFTH             )
CIRCUIT COURT, person or persons;   )
STATE SOUTH DAKOTA SIXTH            )
CIRCUIT COURT, person or persons;   )
STATE SOUTH DAKOTA SEVENTH          )
CIRCUIT COURT, person or persons;   )
LAWRENCE COUNTY PUBLIC              )
DEFENDER OFFICE, person or          )
persons;                            )
MINNEHAHA COUNTY PUBLIC             )
DEFENDER OFFICER, person or         )
persons;                            )
PENNINGTON COUNTY PUBLIC            )
DEFENDER OFFICE, person or          )
persons;                            )
MARTY J. JACKLEY, Attorney          )
General, State of South Dakota;     )
ANN C. MEYER, Assistant Attorney    )
General, State of South Dakota;     )

3

GINA S. NELSON, Deputy State's                    )
Attorney, Pennington County SD;                   )
JAMES IOSTY, Deputy State's                       )
Attorney, Minnehaha County SD;                    )
PATRICK T. PARDY, Deputy State's                  )
Attorney, Miner County SD;                        )
LORA ROETZEL, Deputy State's                      )
Attorney, Pennington County SD;                   )
COLLEEN MORAN, Deputy State's                     )
Attorney, Minnehaha County SD;                    )
ERIC K. JOHNKE, Deputy State's                    )
Attorney, Yankton County SD;                      )
AARON MCGOWAN, Deputy State's                     )
Attorney, Minnehaha County SD;                    )
KERRY M. CAMERON, State's                         )
Attorney, Roberts County SD;                      )
JOHN FITZGERALD, State's                          )
Attorney, Lawrence County SD;                     )
GLENN BRENNER, State's Attorney,                  )
Pennington County, SD;                            )
DEPUTY STATES ATTORNEY-                           )
COUNTY STATES ATTORNEY- STATES                    )
ATTORNEY- ASSISTANT ATTORNEY                      )
GENERAL- DEPUTY ATTORNEY                          )
GENERAL-ATTORNEY GENERAL-                         )
DISTRICT ATTORNEY-                                )
PROSECUTING ATTORNEY-                             )
PUBLIC DEFENDER of the                            )
Represented Class of Inmates                      )
incarcerated to Which such matters                )
of the cause affects and/or affected              )
in this class action lawsuit, in the              )
State of South Dakota;                            )
ALL THE CIRCUIT COURT JUDGES,                     )
OF THE FIRST, SECOND, THIRD,                      )
FOURTH, FIFTH, SIXTH, AND                         )
SEVENTH CIRCUIT COURT IN THE                      )
STATE OF SOUTH DAKOTA to                          )
which such matters of this class                  )
action law suit involved;                         )
SOUTH DAKOTA STATE DIETICIAN,                     )
person or persons;                                )

4

C.B.M.,contracted with the )
Department of Correction of South )
Dakota; )
ROBERT DOOLEY, Warden, Mike )
Durfee State Prison; )
CAPT. DOYLE, Correctional Officer, )
Mike Durfee State Prison; )
LT. KAUFENBERG, Special Security, )
Mike Durfee State Prison; )
LAWRENCE COUNTY )
COMMISSIONER, person or )
persons; )
PENNINGTON COUNTY )
COMMISSIONER, person or )
persons; )
HUGHES COUNTY )
COMMISSIONER, person or )
persons; )
ROBERTS COUNTY )
COMMISSIONER, person or )
persons; )
MINER COUNTY COMMISSIONER, )
person or persons; )
MEADE COUNTY COMMISSIONER, )
person or persons; )
MINNEHAHA COUNTY )
COMMISSIONER, person or )
persons; )
YANKTON COUNTY )
COMMISSIONER, person or )
persons; )
BON HOMME COUNTY )
COMMISSIONER, person or )
persons; )
ED LIGTENBERG, Director of South )
Dakota Parole Board of Pardon; )
DEBRA C. FLUTE, Member of South )
Dakota Parole Board of Pardon; )
JAMES P. SMITH, Member of South )
Dakota Parole Board of Pardon; )
PATRICIA MEYERS, Member of )
South Dakota Parole Board of )
Pardon; )

KEITH BONENBERGER, Member of          )
South Dakota Parole Board of          )
Pardon;                               )
JESSE SONDREAL, Member of             )
South Dakota Parole Board of          )
Pardon;                               )
KAY F. NIKOLAS, Member of South       )
Dakota Parole Board of Pardon;        )
DAVE NELSON, Member of South          )
Dakota Parole Board of Pardon;        )
MIKE ROUNDS, Governor of the          )
State of South Dakota;                )
JOHN E. HAAK, Prosecutor, SD          )
Assistant Attorney General of SD,     )
2000-2001;                            )
JOHN R. STEELE, Prosecutor,           )
Aurora County SD;                     )
MATCHAN, Prosecutor, Minnehaha        )
County SD; and                        )
VINCE FOLEY, Prosecutor,              )
Codington County, SD;                 )
                                      )
            Defendants.               )

Plaintiffs, acting pro se, jointly filed this civil rights lawsuit against

defendants. While plaintiffs did not expressly allege that their suit was

brought pursuant to 42 U.S.C. § 1983, they did allege that their suit was

being filed because of perceived constitutional violations and referenced §

1983 in the supplement to their complaint. *See* Docket 1-2 at 1. Therefore,

plaintiffs' complaint will be treated as a civil rights lawsuit under § 1983.

Plaintiffs include an inmate organization, inmates incarcerated at the

Mike Durfee State Prison in Springfield, South Dakota, and inmates

incarcerated at the South Dakota State Penitentiary in Sioux Falls, South

Dakota. Defendants are various state and county officials and various state and county entities. Plaintiffs seek both injunctive relief and monetary damages. They also seek class certification. Because this case is dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, there is no need to reach the class certification issue.

**STANDARD OF REVIEW**

The Prison Litigation Reform Act of 1996 (PLRA) requires this court to dismiss the case if it determines that the action is "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e). Section 1915A is similar, requiring a court to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and dismiss any claims that are frivolous, malicious, or fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915A. An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). While it has long been recognized that "civil rights pleadings should be construed liberally," the complaint must at the very least contain facts that state a claim as a matter of law and must not be conclusory. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). Broad and conclusory statements unsupported by factual allegations are not sufficient. *Ellingburg*

7

*v. King*, 490 F.2d 1270 (8th Cir. 1974). Finally, although pro se complaints

are to be construed liberally, "they must still allege facts sufficient to

support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.

2004). The court is not required to supply additional facts for a pro se

plaintiff, nor construct a legal theory that assumes facts that have not been

pleaded. *Id.* "To state a claim for relief under § 1983, a plaintiff must allege

sufficient facts to show (1) that the defendants acted under color of state

law, and (2) that the alleged wrongful conduct deprived the plaintiff of a

constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848

(8th Cir. 2010) (internal citations omitted).

## DISCUSSION

### I.    Invalid Pleas and Convictions Because of Medication

The first claim appears to be that plaintiffs were under the influence

of antidepressants and other prescription drugs at the time of their trials,

pleas, or other appearances in South Dakota state court. *See* Docket 1-2 at

9 ("This class action lawsuit is for inmates, person or person(s), which were

under any kind of tricyclic Antidepressants, narcotics, or drugs of quality

and/or state of being drowsy by medicational [sic] drugs, at such time of:

Circuit court trial, hearings, and/or Circuit court appearances, which at

such time the Circuit court refused to take notice of such stage of

incompetency."). Plaintiffs state that they are not attacking the validity of

their convictions, but rather seek damages and injunctive relief for the
perceived violations.

No matter how plaintiffs categorize this claim, however, it is barred
by *Heck v. Humphrey,* 512 U.S. 477, 487 (1994). "When a state prisoner
seeks damages in a § 1983 suit, the district court must consider whether a
judgment in favor of the plaintiff would necessarily imply the invalidity of
his conviction or sentence; if it would, the complaint must be dismissed
unless the plaintiff can demonstrate that the conviction or sentence has
already been invalidated." *Id.* Plaintiffs argue that their rights were violated
when "the Circuit court refused to take notice of such stage of
incompetency" due to the medications they were taking. Docket 1-2 at 9.
Thus, plaintiffs are not challenging the medications they were prescribed as
pretrial detainees, but they are asserting that as a consequence of being
prescribed such drugs, they were incompetent to plead guilty, appear at
hearings, or stand trial. Therefore, a finding that plaintiffs' rights were
violated would necessarily imply that their convictions and sentences were
invalid. Plaintiffs have provided no indication that their convictions or
sentences have been invalidated by another court. Thus, plaintiffs' claim for
money damages is barred by *Heck*. Plaintiffs have, therefore, failed to state a
claim upon which relief may be granted. *See Farabee v. Feix*, 119 Fed. App'x
455, 458 (4th Cir. 2005) ("Success on [plaintiff's] claim requires a finding

9

that the drugs administered . . . caused [him] to enter an unknowing and involuntary guilty plea. Such a finding necessarily implies the invalidity of [plaintiff's] conviction, and the district court properly ruled that [his] claim is not cognizable under § 1983."). Thus, plaintiffs' claim for money damages is barred by *Heck*.

As injunctive relief, plaintiffs also request that this court order the state courts of South Dakota to "make it standard court proceedings to introduce a five minute competency questioner to protect fair justice of [the] people of the United States." Docket 1-1 at 19. They also request an injunction ordering "the county jail[s] not [to] prescribe medicational [sic] drugs on such day of court proceedings to always wait until such hearing is over if such person is in need of such medicational [sic] drugs." *Id.* This court lacks the power to award the relief plaintiffs seek. The PLRA requires that injunctions with respect to prison conditions be narrowly tailored. Specifically, the PLRA states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of any Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the federal right. *The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.*

18 U.S.C. § 3626(a)(1) (emphasis added). *See also Tyler v. Murphy*, 135 F.3d 594, 596 (8th Cir. 1998) ("Section 802 of the PLRA amended 18 U.S.C. § 3626 to further restrict the power of federal courts to manage prison conditions through injunctive orders and consent decrees."). The relief plaintiffs seek would require this court to interfere not only with South Dakota's criminal justice system, but also with the management of county jails in South Dakota. It is not the role of federal courts to micro-manage state corrections. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995). Conversely, "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment[.]" *Sandin v. Conner*, 515 U.S. 472, 483 (1995). Thus, because this court cannot award the relief plaintiffs seek, this claim is dismissed for failure to state a claim upon which relief may be granted.

## II.   Waivers and Agreements with the South Dakota Board of Pardons and Parole

Plaintiffs' second claim is that their rights were violated because they were medicated at the time that they "signed or waived rights of any kind, and signing and/or any contract agreement, by the Parole Board of Pardon, to which sentence was imposed, and/or street time was not credited." Docket 1-2 at 9. Plaintiffs further state, "I.S.B. brings action on all parties mentioned above by taking advantage of the mentally ill and disabled inmates by insatiable influencing such inmates to sign the parole agreement

contract." Docket 1-1 at 18. The crux of plaintiffs' claim is that the inmates were incapable of understanding what they were signing at the time the parole agreement contracts were signed. *Id.* This allegation, however, is devoid of factual support. While pro se plaintiffs are held to a lesser pleading standard than other parties, "this standard does not excuse pro se complaints from 'alleging sufficient facts to support the claims advanced.' " *Gerstner v. Sebig, L.L.C.*, 386 Fed. App'x 573, 575 (8th Cir. 2010) (quoting *Stone*, 364 F.3d at 914). "Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). Because plaintiffs' claim lacks factual support, it is dismissed for failure to state a claim upon which relief may be granted.

## III.   Absence of a D.O.C. Program to Prevent Recidivism

Plaintiffs' third claim is that the Department of Corrections has violated their Fourteenth Amendment rights by "depriving liberty upon release from prison." Docket 1-1 at 12. "The inmates incarcerated are saying that the Department of Correction[s] [does] not have a program stabled [sic] to keep inmates from returning to prison after they are release[d]." "In order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003).

12

Plaintiffs have not made this showing. Rather, they complain of the absence of a program that could help them remain in society after they are released. Plaintiffs are all currently incarcerated. Thus, the absence of such a program has not deprived them of life, liberty, or property. While a few plaintiffs have been released from custody, none of them have been re-incarcerated because the DOC lacks such a program. Because plaintiffs have not been injured by the failure of the state to provide such a program, they lack standing to challenge the program's absence. *See Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 816 (8th Cir. 2008) (holding that an inmate who did not allege injury lacked standing to challenge prison policy of providing kosher diet). *See also Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir. 2007) ("The constitutional minimum of standing requires an injury in fact, a causal connection between the injury and the conduct complained of, and a likelihood that it will be redressed by a favorable decision."). Because plaintiffs have not alleged an injury, they have failed to state a claim upon which relief may be granted.

## IV.   Access to the Courts

The next claim is that the Department of Corrections and its employees  are obstructing and conspiring against inmates' rights to access the courts. In support of this claim, plaintiffs assert that "the correctional officers during routine cell search out of inmates presents [sic] are taking

inmates' legal and medical documents." Docket 1-1 at 12. They further argue that "[i]nmates also are stating that the staff are not stabled or consistant [sic] with their open door policy to access the courts. Staff are going on vacation and/or absent[.]" *Id.*

Inmates have a constitutional right to meaningful access to the courts and the legal system. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "Meaningful access to the courts is the capability to bring 'actions seeking new trials, release from confinement, or vindication of fundamental civil rights.' " *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (quoting *Bounds v. Smith*, 430 U.S. 817, 827 (1977)). In order to prevail on an access to the courts claim, an inmate must demonstrate that he sustained an "actual injury" as a result of the challenged policy. *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001). "To prove actual injury, a prisoner must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008). Plaintiffs have not asserted that a non-frivolous legal claim is being impeded or has been frustrated. Accordingly, they have failed to state a claim upon which relief may be granted.

## V.    Due Process Violations due to Employment of Family Members

Plaintiffs' next claim also alleges that they are being deprived of due process of law in violation of the Fourteenth Amendment. They assert that

14

the Department of Corrections is "hiring too many family members at Mike Durfee State Prison." Docket 1-1 at 13. Plaintiffs argue that they are "not receiving fair treatment regarding disciplinary procedures and bias [sic] conduct of correctional officers." *Id.* But plaintiffs provide no facts in support of their allegations. While pro se complaints are to be construed liberally, "they must still allege facts sufficient to support the claims advanced." *Stone*, 364 F.3d at 914. Plaintiffs have provided conclusory allegations without any supporting facts. Thus, this claim fails to state a claim upon which relief may be granted.

## VI.   **Invasion of Medical Privacy**

Plaintiffs assert that defendants violated their Fourth Amendment right to be free from unreasonable searches and seizures and that the Department of Corrections has "violated their medical privacy act." Docket 1-1 at 14. In support of this allegation, plaintiffs state that "[t]he nurses employed with the Department of Correction[s] will openly speak out loud about inmates [sic] health related problems and medications in front of other inmates and correctional officers." *Id.*

First, plaintiffs have failed to state a Fourth Amendment claim. The Fourth Amendment protects the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures, shall not be violated . . .”). The Fourth Amendment does not create a right of medical privacy. *See Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that the disclosure of an inmate’s HIV status to a correctional officer did not violate the inmate’s constitutional rights); *Treesh v. Cadaris*, No. 2:10-CV-437, 2010 WL 3603553 at *3 (S.D. Ohio Sept. 9, 2010) (dismissing an inmate’s claim that a prison nurse violated his right to medical privacy under the Fourth Amendment for failure to state a claim upon which relief may be granted). Thus, plaintiffs have not alleged a violation of a constitutionally protected federal right. *See Zutz*, 601 F.3d at 848 (holding that an element of a § 1983 claim is that “the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.").

Second, plaintiffs do not identify which “medical privacy act” was allegedly violated. Thus, because pro se complaints are accorded a liberal construction, this court assumes that plaintiffs are arguing that defendants violated their privacy rights under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the right to medical privacy contained in prison policy. Because there is no private cause of action for enforcement of HIPAA, plaintiffs’ claim, to the extent it is based on an alleged HIPAA violation, has failed to state a claim upon which relief may be granted. *See Adams v. Eureka Fire Protect. Dist.*, 352 Fed. App’x 137, 139 (8th Cir. 2009) (holding that because HIPAA does not create a private right

16

of action, it may not be enforced through a § 1983 claim); *Reese v. McNabb*, No. 08-5200, 2008 WL 5101973 at *1 (W.D. Ark. Dec. 1, 2008) (dismissing an inmate's § 1983 claim based on a HIPAA violation for failure to state a claim). Plaintiffs may also be basing their claim on prison policy. But "there is no § 1983 liability for violating prison policy." *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). Thus, this claim is dismissed for failure to state a claim.

## VII.   Employers' Liability

Plaintiffs next argue that defendants Tim Reisch, Cabinet Secretary of the Department of Corrections, the Commission of the State Dakota Division of Insurance, and the South Dakota Department of Bureau of Personnel, are liable to plaintiffs. All defendants state is, "I.S.B. brings actions of liability and employee responsibility on the departments stated above." Docket 1-1 at 14. A pro se complaint, regardless of how inartfully pleaded, is held to less stringent standards than pleadings drafted by lawyers and may only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 n.7 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). This policy of liberal construction, however, "does not mandate that a court sustain every pro se

17

complaint even if it is incoherent, rambling, and unreadable." *Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. 1991).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint set forth "a short and plain statement of the claim showing that [Plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This rule also requires that each claim be "simple, concise and direct." Fed. R. Civ. P. 9(e)(2). The purpose of this rule is that a defendant be given fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Romine v. Acxiom Corp.*, 296 F.3d 701, 711 (8th Cir. 2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). This claim does not give defendants such fair notice of either the claims or grounds upon which they rest. This claim is, therefore, dismissed for failure to state a claim upon which relief may be granted.

## VIII.  Price Fixing

Plaintiffs assert that defendants are violating their constitutional rights by fixing prices on commissary items. Docket 1-1 at 14. In support of this allegation, plaintiffs assert that "C.B.M. is contracted under the color of law with the D.O.C. and are [sic] inflating prices higher than the dollar store." *Id.*

"Inmates have no constitutionally protected interest in purchasing stamps, food substances, or any other goods through a prison commissary at the cheapest price possible." *Maxwell v. Byrd*, No. 4:10-cv-00903, 2010

WL 3515774, at *3 (E.D. Ark. Aug. 10, 2010). *See also McCall v. Keefe Supply Co.*, 71 Fed. App'x. 779, 780 (10th Cir. 2003) (affirming the dismissal of a pro se inmate's claim that commissary prices violated the Eighth Amendment for failure to state a claim upon which relief may be granted); *French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980) ("[T]here is simply no legal basis for a demand that inmates be offered items for purchase at or near cost."). Accordingly, plaintiffs have failed to state a claim upon which relief may be granted.

## IX. Deliberate Indifference—Housing Assignments and Assaults

Plaintiffs next assert that defendants have been deliberately indifferent to their safety in violation of the Eighth Amendment. Docket 1-1 at 15. "Inmates incarcerated are stating they have been assaulted by both correctional officers and inmates, physically and verbally while being incarcerated by the State of South Dakota[.]" *Id.* They assert that the "State of South Dakota Department of Correction[s] had knowledge of attacks by other prisoners, because of their housing conditions." *Id.* Specifically, plaintiffs state that "the department is housing violent inmates with non-violent inmates, along with young inmates under 21 years of age" and "the department also place[s] mentally disturbed inmates in the same manner[.]" *Id.*

19

Beyond these general allegations, several prisoners have provided statements relating to these complaints. *See*, *e.g.*, Docket 178, 179, 184. Plaintiff Nicholas Hemsher asserts that he was sexually assaulted by William Carter, another inmate. Docket 178. Hemsher states, "the act happened in the basement shower in East Hall. The inmate Carter pushed me against the third pillar and told me to pull down my pants. He then fondled my penis and proceeded to perform oral sex on me." *Id.* Plaintiff Ramon V. Garcia states, "Complaintiff [sic]  have [sic]  been assaulted and spit upon by other inmates. Have had his life threatened several times." Docket 179. Plaintiff James R. James asserts that he was "attacked by inmate, Robert Horse, in which the inmate broke complaintiff [sic] leg, breaking the tibia (shin bone) and fibula (leg bone) in the custody of the D.O.C. housing unit." Docket 184.

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. In order to prevail on a failure to protect claim, a prisoner must demonstrate two things. First, he must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Spruce v. Sargent*, 149 F.3d 783, 785 (8th Cir. 1998).

20

Second, an inmate must demonstrate that prison officials were deliberately indifferent to that risk. *Id.* "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." *Farmer*, 511 U.S. at 837. Even assuming plaintiffs have made a showing that they are incarcerated under "conditions posing a substantial risk of serious harm," they have not shown that prison officials knew they were at risk and deliberately disregarded the risk. A general assertion that defendants were aware that violent inmates were housed with non-violent inmates is insufficient. *See Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995) (holding prison officials are entitled to qualified immunity for an inmate attack when they have knowledge "that the attacking inmate may be dangerous or violent," but no knowledge of a specific threat). Therefore, because plaintiffs have not asserted that prison officials were aware of a risk that they would be assaulted by their assailants, they have failed to state a claim upon which relief may be granted.

## X.   Deliberate Indifference—Medical Care

Plaintiffs' next claim is that defendants have been deliberately indifferent to their medical needs, violating the Eighth Amendment. Docket 1-1 at 16. "The inmates incarcerated brings [sic] deliberate indifference on the Department by the treatment and use of pain medication, particularly ibuprofen as the department choice as a pain reliever." *Id.* Plaintiffs assert

21

"[m]any inmates incarcerated cannot take NSAID products because of problems with their abdomen." *Id.*[1] "Many inmates has reports [sic] being ill by the ibuprofen and some go as far as being hospitalized and surgery." *Id.* "Even after informing medical staff about ibuprofen, inmates often are ignored." *Id.* Plaintiffs also assert that the "Department of Correction[s] and the Department of Health of South Dakota has [sic] an intake system using prognosis of all inmates because of the high percentage of inmates returning to prison." *Id.* Plaintiffs assert that this process "puts first time offender[s] with any chronic medical problems or disabilities at risk." *Id.*

It is well established that "deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Gordon ex. rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). "To show deliberate indifference, plaintiffs must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it." *Id.* "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). To state a claim

---

[1] NSAID presumably stands for non-steroidal anti-inflammatory drug. Ibuprofen is a commonly prescribed NSAID. *See* Stedman's Medical Dictionary 942 (28th ed. 2006).

based on "inadequate medical treatment . . . [t]he plaintiff must 'show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.' " *Alberson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006) (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Plaintiffs do not allege that they were deliberately given the wrong medication. They have, at the most, alleged facts amounting to gross negligence, not deliberate indifference. *See Daniels v. Ferguson*, 321 Fed. App'x 531, 532 (8th Cir. 2009) (holding that a state prison official who gave a pretrial detainee the wrong medication was not deliberately indifferent); *Nard v. Colclough*, No. 4:05-CV-00429, 2007 WL 30218 at *1 (E.D. Ark. Jan. 3, 2007) ("Assuming the Defendant, as Plaintiff contends, was the person who came to his room, gave him the wrong medication, and told him to take it even after Plaintiff expressed his belief it was the wrong medication, such conduct, without more, does not rise to the level of deliberate indifference to his medical needs."). Thus, plaintiffs have failed to state a claim upon which relief may be granted.

Plaintiffs also challenge the South Dakota Department of Corrections' intake system as violative of the Eighth Amendment. But plaintiffs have not alleged that any inmates have been harmed by this policy; rather, they assert that it puts certain first time offenders at risk. This is insufficient.

23

*See Mason v. Corr.  Med. Servs.*, 559 F.3d 880, 885 (8th Cir. 2009) ("To prevail on his claim based on the Eighth Amendment, [plaintiff] must show that he had a serious medical need of which [defendant] was aware, and that [defendant's] *deliberate indifference to that need caused harm to plaintiff*.") (emphasis added); *Senty-Haugen v. Goodno*, 462 F.3d 876, 890 (8th Cir. 2006) ("Deliberate indifference is a higher standard than gross negligence, and [plaintiff] must prove that officials knew about excessive risks to his health but disregarded them, and *that their unconstitutional actions in fact caused his injuries*.") (internal citations omitted) (emphasis added). Because plaintiffs have not alleged that any inmates have been harmed by this policy, their claim is dismissed for failure to state a claim upon which relief may be granted.

## XI.    Forced Labor

Plaintiffs' next claim is that the prison work system violates their rights under the Fourteenth Amendment and the Fair Labor Standards Act (FLSA). They state, "I.S.B. brings actions on the parties state above for force [sic] labor while being incarcerated without access to pay living expenses and not abled [sic] to pay off any bills." Docket 1-1 at 20. The plaintiffs ask "if inmates [are] only receiving $.25/hour, where do the rest of the wages from the work labor go if none are going to living expences [sic] for families, child support, restitution, or living bills?" *Id.* Plaintiffs assert that "[i]nmates

24

incarceration [sic] work labors as welders, carpenters, painters, kitchen workers, roofers, auto body, and landscaper." *Id.*

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Thus, in order to prevail on their Fourteenth Amendment claim, plaintiffs must demonstrate they have a property interest in being paid more than \$.25 per hour for their work in prison. *Hrbek v. Farrier*, 787 F.2d 414, 416 (8th Cir. 1986). "[T]here is no constitutional right to prison wages and any such compensation is by the grace of the state." *Id.* Accordingly, a property interest in prison employment, and in the compensation derived from it, can only be created by state law. *Lyon v. Farrier*, 727 F.2d 766, 769 (8th Cir. 1984).

Plaintiffs point to no such state law, but assert that the FLSA mandates that they be paid the minimum wage for their work. The Eighth Circuit rejected a similar claim in *McMaster v. State of Minnesota*, 30 F.3d 976 (8th Cir. 1994). "Inmates . . . who are required to work as part of their sentences and perform labor without a correctional facility as part of a state-run prison industries program are not 'employees' of the state or prison within the meaning of the Fair Labor Standards Act." *Id.* at 980. The court reasoned that "[t]he primary purpose of the FLSA—providing minimum standards of living for workers—has no application in the prison

25

context. Food, clothing, and shelter are provided to the prisoners by the state, regardless of their ability to pay." *Id.* Thus, plaintiffs have failed to state a claim upon which relief may be granted.

## XII.   Fraud by Account Embezzlement

Plaintiffs next argue that prison officials are violating the Eighth Amendment when they deduct money from inmates' accounts that came from outside sources. "I.S.B. brings a simple argument; family member [sic], friends, or church member [sic] are not obligated to pay any inmate's court or prison obligations." Docket 1-1 at 20. "When family members or others send money or care to inmates by money orders, such funds are not to pay off fines, restitution, or any obligations owed by such inmates." *Id.* They concluded that the "State of South Dakota is illegal [sic] garnishing funds *from the sender." Id.* (emphasis added).

Plaintiffs, however, do not have standing to assert a claim on behalf of their family members, friends, or churches. Article III of the United States Constitution requires that the plaintiff requesting relief show that he has suffered harm or that the harm is threatened or imminent. "In order to secure an adjudication from a federal court, a 'plaintiff must show that *he has sustained or is immediately in danger of sustaining some direct injury*' as a result of the challenged official conduct[.]" *Meis v. Gunter*, 906 F.2d 364, 367 (8th Cir. 1990) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102

26

(1983)) (emphasis added). Here, the injury complained of is "illegal [sic] garnishing funds from the sender." Plaintiffs cannot assert these claims on behalf of their families and friends. *See Holloway v. Magness*, No 5:07CV0008, 2008 WL 2367235 at *7 (E.D. Ark. June 6, 2008) (dismissing inmates' complaint for failure to state a claim upon which relief may be granted). Thus, plaintiffs' claim is subject to dismissal.

## XIII. Due Process—Fear of Filing State Habeas

Plaintiffs next claim that their due process rights have been violated. "I.S.B. brings action on the parties above for conducting fear to inmates for filing a writ of habeus [sic] corpus." Docket 1-1 at 21. "Inmates incarcerated develop great fear of filing state habeas because they are afraid of being sentence [sic] one more time." *Id.* They argue that "[t]he South Dakota state circuit courts already has [sic] the power to accept or deny a state habeus [sic] application, by implicating that inmates can get more time if they proceed to file such defeats all reasonable cause of the purpose of filing a writ of state habeas corpus." *Id.* The gravamen of plaintiffs' claim appears to be that some state prisoners do not file habeas corpus applications in state court for fear of being resentenced more harshly if they prevail and are granted a new trial. But this claim is not ripe for review.

Federal courts may adjudicate only actual, ongoing cases or controversies. "From this bedrock requirement flow several doctrines—e.g.

27

standing, mootness, ripeness, and political question- which state

fundamental limits on the federal judicial power in our system of

government." *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996)

(citations and quotations omitted). The ripeness doctrine requires that

"before a federal court may address itself to a question, there must exist a

real substantial controversy between parties having adverse legal interests,

a dispute definite and concrete, not hypothetical or abstract. *Neb. Pub.*

*Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000).

This doctrine seeks "to prevent the courts, through avoidance of premature

adjudication, from entangling themselves in abstract disagreements." *Id.* at

1037. To be ripe for decision, the harm asserted must have matured enough

to warrant judicial intervention. *Johnson v. Missouri*, 142 F.3d 1087, 1090

n.4 (8th Cir. 1998). While the plaintiffs need not wait until the threatened

injury occurs, it must be "certainly impending." *Employers Ass'n v. United*

*Steelworkers AFL-CIO-CLC,* 32 F.3d 1297, 1299 (8th Cir. 1994) (internal

citations omitted). Plaintiffs have, at most, presented an abstract problem.

In order for the injury they complain of to be certainly impending, plaintiffs

would need to demonstrate at the minimum, that an inmate had filed a

meritorious application for writ of habeas corpus in state court and that the

inmate was at risk of being sentenced more harshly. Because the issue is

not ripe for review, plaintiffs' claim is dismissed for failure to state a claim.

28

## XIV.  Lead Paint

Plaintiffs' final claim is that "lead paint in the older buildings up on the Hill in Sioux Falls, East Hall, and segregation detention areas" is causing inmates to suffer from headaches. Docket 1-1 at 22. They assert that the "[l]ead paint has been conceled [sic] with other paint to hide from inspectors[.]" *Id.* According to plaintiffs, defendants "the Department of Corrections of South Dakota, the Department of Corrections Cabinet Secretary,[2] Tim Reisch- Warden, and Director of Prison Operation, Douglas Weber," are liable under § 1983 for deliberate indifference to their health and safety. But in order for a prison official to be liable under § 1983, there must be a "substantial risk to the inmate's safety" and the officer *must have knowledge* of the substantial risk and disregard it. *Davis v. Oregon Cnty, Missouri*, 607 F.3d 543 (8th Cir. 2010) (emphasis added). "The subjective component requires that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also draw the inference. *Norman v. Schutezle,* 585 F.3d 1097, 1104 (8th Cir. 2009). Even accepting as true plaintiffs' assertions that lead paint is present in the facilities, plaintiffs have not pleaded facts indicating that defendants Reisch and Weber knew of and disregarded the risk of

---

[2] Plaintiffs have incorrectly listed defendant Tim Reisch's title. He is the Secretary of Corrections according to the South Dakota Department of Corrections website. South Dakota Department of Corrections Site, http://doc.sd.gov (last visited January 25, 2011).

serious harm. *See Tipps v. Leonard*, 328 Fed. App'x 302, 303 (5th Cir. 2009) (affirming pre-service dismissal of inmate's § 1983 complaint because he did not allege that the prison official knew of and disregarded a serious risk of harm posed by lead paint); *Wilson v. Hambrick*, 7 F.3d 237 (6th Cir. 1993) (affirming dismissal of inmates' § 1983 complaint regarding lead paint where plaintiffs did not assert that prison officials knew of the conditions). Thus, plaintiffs' claim is dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

Because none of plaintiffs' claims state a claim upon which relief may be granted, this case is dismissed pursuant to 28 U.S.C. § 1915(e) and § 1915A. Plaintiffs are advised that each is assessed a "strike" as explained in § 1915(g). Therefore, it is

ORDERED that plaintiffs' case is dismissed for failure to state a claim upon which relief may be granted.

IT IS FURTHER ORDERED that all pending motions in this case are denied as moot.

Dated April 1, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

30